IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-2593-RBJ

RENEE D. MARTINEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security

    Defendant.

## ORDER

This matter is before the Court on review of the Commissioner's decision denying claimant Renee D. Martinez's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

### I. Standard of Review

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not

substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Background

Ms. Martinez, who was born on July 23, 1966, lives in Pueblo, Colorado. She has previously worked as a nursing supervisor, health services administrator, general duty nurse, nurse instructor, and home care provider, but she has not worked since her alleged onset date of April 21, 2011. The claimant has a history of physical and mental health problems.

### A. Procedural History

On May 25, 2011, Ms. Martinez filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning April 21, 2011. The claim was initially denied on November 7, 2011. The claimant then filed a request for a hearing, which was held on December 20, 2012, in front of Administrative Law Judge Debra Boudreau. The ALJ issued a decision denying the claimant's request for benefits on January 4, 2013. The Commission denied her request for review on July 15, 2014, and Ms. Martinez filed a timely appeal in this Court.

### B. The ALJ's Decision

The ALJ issued an unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process. R. at 24-33. First, she found that the claimant met the insured status requirements of the Social Security Act through June 30, 2012. R. at 26. Next, at step one, she found that Ms. Martinez had not engaged in substantial gainful activity since her alleged onset date of April 21, 2011. R. at 26. At step two, the ALJ found that the claimant had the following severe impairments: obesity, rheumatoid arthritis, fibromyalgia, degenerative disc disease, trochanteric bursitis, obstructive sleep apnea, depressive

disorder, and post-traumatic stress disorder. R. at 26. At step three, the ALJ concluded that Ms. Martinez did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 26–28. She then found that the claimant has the residual functional capacity ("RFC") to perform sedentary work except she can only occasionally lift 10 pounds; can stand and/or walk up to two hours; can sit up to six hours; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; can frequently reach overhead bilaterally, with no other limits on reaching; can handle and finger bilaterally on a frequent basis; and must avoid concentrated exposure to temperature extremes, pulmonary irritants, hazardous machinery and heights. R. at 28–32. Furthermore, the ALJ found that Ms. Martinez can understand and remember work tasks that require up to three months to learn; interact appropriately with co-workers and supervisors; and can tolerate routine work changes, travel, plan, set goals, and recognize and avoid work hazards. R. at 28–32. Turning to step four, the ALJ found that Ms. Martinez was not capable of performing any past relevant work. R. at 32. Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant could perform. R. at 32–33. She thus concluded that Ms. Martinez had not been under a disability. R. at 33.

### III. Discussion

The claimant contends that the ALJ made the following errors in her opinion denying benefits: (1) the ALJ improperly adopted the opinion of the single decision maker ("SDM") under the guise of following Dr. Panek's opinion; (2) the ALJ improperly assigned little weight to the opinion of Dr. Hess, Ms. Martinez's treating physician; and (3) the ALJ erred in giving great weight to Dr. Suyeishi's opinion and then failing to account for the limitations he identified. The Court will address each in turn.

### A. The SDM's Opinion

Ms. Martinez argues that the ALJ improperly relied on the opinion of the SDM under the guise of following Dr. Panek's opinion. ECF No. 12 at 20. An opinion by an SDM is not a medical opinion and is worthy of no weight in an ALJ's RFC assessment. *Ogden v. Astrue,* No. 10–cv–2450, 2012 WL 917287, at*4 (D.Colo. Mar. 19, 2012) (holding that "the opinion of an SDM, who is not a medical professional of any stripe, is entitled to no weight"). However, the ALJ may afford weight to a state agency physician's opinion that adopts the SDM's findings. *Holley v. Colvin*, No. CIV.A.12-4057-JWL, 2014 WL172183, at *8 (D. Kan. Jan. 15, 2014).

Here, the functional limitations espoused by the ALJ can be traced back to the SDM's opinion. *Compare* R. 29 *with* R. 90. It appears that the ALJ followed the SDM's RFC under the belief that Dr. Panek had adopted the SDM's findings as her own. R. 29. The ALJ attributed great weight to Dr. Panek's opinion and concluded the following:

> The undersigned considered the analysis of Judy Panek, M.D., who reviewed the findings of the single decision maker. (Exh 21F) Accordingly, Dr. Panek opined that, due to the claimant's rheumatoid arthritis, fibromyalgia, spine impairment, trochanteric bursitis, osteoarthritis, obesity, pain and fatigue, the evidence supported the Single Decision Maker's residual functional capacity.

R. 30. However, Dr. Panek never stated that she agreed with the RFC assessed by the SDM. R. 876. Dr. Panek simply noted, "RFC completed by SDM on 11/7/11 for sedentary work with frequent OH reaching, handling and fingering bilaterally." R. 876.

The government argues that this case is analogous to *Holley* and *Kern*, where a state agency physician reviewed and affirmed the SDM's findings and then the ALJ relied on the state agency physician's opinion. ECF No. 13 at 11 (citing *Holley*, 2014 WL172183, at *8 and *Kern v. Astrue*, No.CIV.A.11 1308 JWL, 2012 WL 4442622, at *7 (D. Kan. Sept. 26, 2012)). I disagree. *Holley* and *Kern* are easily distinguishable. In both cases the state agency physician stated that the SDM's RFC assessment was "affirmed as written." *Holley*, 2014 WL172183, at

*8; *Kern*, 2012 WL 4442622, at *6.  Thus, the state agency physicians expressly and unambiguously adopted the SDMs' opinions as their own.  *Holley*, 2014 WL172183, at *8; *Kern*, 2012 WL 4442622, at *6.  However, Dr. Panek's opinion does not clearly indicate her intent to adopt the SDM's opinion.  Consequently, the SDM's opinion should not have been afforded any weight, and the ALJ erred in relying on the SDM's opinion in formulating her RFC.

### B. Dr. Hess's Opinion

Ms. Martinez argues that the ALJ improperly assigned little weight to the opinion of Dr. Hess, her treating physician.  A treating physician's opinion is generally entitled to deference and often is afforded more weight than the opinions of non-examining physicians or an agency physician.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  However, ALJs still must assess what weight should be assigned to a treating physician's opinion and may decline to defer to such an opinion if a legally sufficient reason for doing so is provided.  *See id*. ("[T]he ALJ erred in rejecting the treating-physician opinion . . . in favor of the non-examining . . . opinion . . . *absent a legally sufficient explanation for doing so*.") (emphasis added); *see also Tarpley v. Colvin,* 601 Fed. Appx. 641, 643-44 (10th Cir. 2015) (holding that the ALJ did not err by declining to afford significant weight to a treating physician's opinion, given that the ALJ provided an adequate explanation of his decision that was consistent with the relevant legal factors considered in such an analysis).  In analyzing a treating physician's opinion, the ALJ must first determine whether it should be afforded controlling weight.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  A treating physician's opinion "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

If the ALJ finds that an opinion is not entitled to controlling weight, he must go on to determine what weight to assign it. *Id.* At this second step of the analysis, the ALJ must "make clear how much weight the opinion is being given . . . and give good reasons . . . for the weight assigned." *Id*. The factors relevant to this determination include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the relevant area; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion. *Id.* at 1131. However, an ALJ need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ must "provide[ ] good reasons in his decision for the weight he gave to the treating sources' opinion" and, if the ALJ rejects that opinion completely, "he must give specific, legitimate reasons for doing so." *Id.*; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

In the present case, the ALJ did not separately address each step of the two-step analysis described above, but rather collapsed the analysis into a single finding that Dr. Hess's opinion was entitled to "very little weight."[1] *See* R. at 31. The ALJ's opinion cites a number of reasons

---

[1] Ms. Martinez argues that under Tenth Circuit law, affording an opinion little weight is essentially the same as rejecting it. ECF No. 12 at 26 (citing *Chapo v. Astrue,* 682 F.3d 1285, 1291 (10th Cir. 2012)). Furthermore, she asserts that an opinion can be denied controlling weight for being inconsistent with other substantial evidence in the record at step one, but it cannot be rejected for this reason at step two. ECF No. 14 at 13 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *1). Ms. Martinez misunderstands the law. Social Security Ruling 96-2p states that a finding that a treating source's medical opinion is not entitled to controlling weight at step one (which may be based on its inconsistency with the record) does not *necessarily* mean the opinion is rejected at step two. Nowhere does it state that an ALJ cannot consider whether the opinion is inconsistent with other substantial evidence at step two. In fact, "the degree to which the physician's opinion is supported by relevant evidence" is one of the six factors the ALJ is supposed to consider at the second step. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

for assigning the opinion such weight: the opinion's internal inconsistencies, the fact that it is inconsistent with other evidence on the record, and the gross overstatement of the onset of the purported limitations.  R. 31.  The claimant contends that (1) collapsing the analysis into a single step is improper; (2) the ALJ did not adequately explain her stated reasons for giving the opinion very little weight; and (3) the ALJ erred by affording more weight to Dr. Panek's opinion than Dr. Hess's.  As explained below, the Court is not persuaded these arguments.

Considering Ms. Martinez's first argument, the Tenth Circuit has held that when an ALJ's analysis of what weight to afford a treating physician's opinion makes clear that the ALJ implicitly declined to give the opinion controlling weight, the decision should not be reversed for failing to separately address each step.  *Mays v. Colvin,* 739 F.3d 569, 575 (10th Cir. 2014) (refusing to reverse the ALJ's opinion due to the ALJ's failure to expressly state whether he had given the treating physician's opinion controlling weight because "the ALJ implicitly declined to give" the opinion controlling weight); *see also Tarpley v. Colvin,* 601 Fed. Appx. at 643 ("[A]ny imaginable oversight on this score is clearly harmless because the ALJ's ruling unambiguously demonstrates that he declined to give the opinions controlling weight.").  Here, the ALJ found that Dr. Hess's opinion was inconsistent with other evidence in the record, R. at 31, which constitutes a sufficient reason for not giving the opinion controlling weight.  *See Krauser*, 638 F.3d at 1330.  This, along with the ALJ's decision to afford Dr. Hess's opinion "very little weight," indicates that the ALJ implicitly declined to give the opinion controlling weight.  Therefore, the Court will not remand the ALJ's decision on the basis that the ALJ failed to separately address each step in this analysis.

Considering Ms. Martinez's second argument, the Court finds that the ALJ adequately explained her reasons for giving Dr. Hess's opinion very little weight.  Rather than

impermissibly making "conclusions in the guise of findings," the ALJ adequately linked her findings to "evidence in the record." *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2014) (holding that the ALJ erred by citing "boilerplate language" that merely listed the factors the ALJ considered and was repeatedly used "to reject the testimony of numerous claimants" instead of discussing specific evidence in the record supporting the ALJ's conclusions). First, the ALJ noted that Dr. Hess's opinion was internally inconsistent. R. 31. She explained that Dr. Hess first indicated that Ms. Martinez can initiate, sustain, and complete fine/gross movements effectively, but subsequently opined that she is "essentially precluded" from grasping, turning, or twisting objects and using her fingers or hands for fine manipulations. R. 2028. Second, the ALJ stated that Dr. Hess's opinion was not supported by the treatment record. R. 31. In her analysis of the objective diagnostic evidence, the ALJ determined that the radiographs of Ms. Martinez's hips, cervical, and spine, as well as examinations of her hip, back, neck, and joint pain only indicated mild to moderate findings. R. 29. The ALJ found the "mild to moderate objective findings" to be inconsistent with the "marked limitations" identified in Dr. Hess's opinion. R. 31. Finally, the ALJ stated that Dr. Hess's opinion was not supported by Ms. Martinez's work history. R. 31. She noted, "Dr. Hess opined that these marked limitations have existed since the year 2006, even though [Ms. Martinez] was able to work as a nurse until the year 2011, and was performing these functions."[2] R. 31.

    Considering Ms. Martinez's third argument, it is not necessarily improper for the ALJ to afford more weight to the opinion of the non-examining physician, Dr. Panek, than the opinion of the treating physician, Dr. Hess. *See e.g., Tarpley,* 601 Fed. Appx. At 643-44 (affirming the

---

[2] Ms. Martinez's contention that this finding required the ALJ to further develop the record is incorrect. *See* 20 C.F.R. § 404.1520b (noting that if the evidence is inconsistent, an ALJ "may" recontact the physician for further explanation); *Borgsmiller v. Astrue*, 499 F. App'x 812, 816 (10th Cir. 2012) (noting that the ALJ's "duty" to recontact a medical source became discretionary effective March 26, 2012).

ALJ's decision to afford significant weight to the nonexamining agency physician's opinion while affording no weight to the treating physicians' opinions). The question of what weight to afford a treating physician's opinion is separate from the question of what weight to afford a non-examining physician's opinion. *See* 20 C.F.R. 416.927(c) and (e) (describing how the Commissioner will "evaluate every medical opinion [she] receive[s]," the factors used in this evaluation, and the process for evaluating treating source opinions and the separate, albeit similar, process for evaluating "[o]pinions of nonexamining source"). As discussed above, while a treating physician's opinion is generally entitled to deference, the ALJ properly explained why she gave Dr. Hess's opinion "very little weight." Regarding Dr. Panek's opinion, since the Court found that Dr. Panek did not expressly endorse the SDM's opinion, the SDM's opinion will consequently not be afforded any weight on remand. Therefore, the ALJ must assess what weight to give Dr. Panek's Case Analysis as a stand-alone medical opinion separate from the SDM's conclusions. Considering that Dr. Panek's Case Analysis is essentially a summarized recitation of the other treating and nontreating medical professionals' opinions, this may very well lead the ALJ to afford Dr. Panek's Case Analysis less weight than she did when she considered Dr. Panek's opinion to be an endorsement of the SDM's opinion. However, this assessment is distinct from the question of what weight to assign Dr. Hess's opinion, and the Court declines to adopt the categorical rule that an ALJ cannot afford greater weight to a nonexamining physician's opinion.

Considering this, the ALJ did not err by combining the analysis of whether to give Dr. Hess's opinion controlling weight with the analysis of what weight to ultimately give Dr. Hess's opinion. The ALJ also adequately explained why Dr. Hess's opinion was given very little weight. Lastly, while the ALJ will have to reconsider what weight to afford Dr. Panek's opinion

on remand in light of my holding that Dr. Panek did not endorse the SDM's opinion, the ALJ is not necessarily foreclosed from affording greater weight to a nonexamining physician's opinion than Dr. Hess's opinion.

### C. Dr. Suyeishi's Opinion

Ms. Martinez next argues that the ALJ did not properly evaluate the opinion of Dr. Mark Suyeishi. ECF No. 12 at 32. In November 2011, Dr. Suyeishi completed a Mental Residual Functional Capacity Assessment ("MRFCA") for Ms. Martinez. R. 87-89. In Section I of the MRFCA, Dr. Suyeishi indicated that Ms. Martinez has moderate limitations in her ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors. R. 88. In Section III of the MRFCA, Dr. Suyeishi concluded that Ms. Martinez "retains mental ability to do work not involving significant complexity or judgment; can do work requiring up to 3 months time to learn techniques, acquire information and develop facility needed for an average job performance." R. 89.

Ms. Martinez claims that the ALJ's RFC finding accounted for the first three limitations in Section I of the MRFCA, but that it did not account for the fourth Section I limitation in Ms. Martinez's ability to accept instructions and respond appropriately to criticism from supervisors. ECF No. 12 at 32. Therefore, Ms. Martinez argues that having given Dr. Suyeishi's opinion great weight, the ALJ was required to explain why she did not adopt his fourth Section I finding. ECF No. 12 at 32. The government asserts that the ALJ was entitled to rely solely on Dr. Suyeishi's Section III narrative, which constituted Dr. Suyeishi's ultimate opinion about Ms. Martinez's mental health. ECF No. 13 at 18-19. The Court agrees with Ms. Martinez.

Section I of an MRFCA "is for recording summary conclusions," while "Section III is for recording a detailed explanation of the degree of the limitation for each Section I category." *Fulton v. Colvin*, No. 15-6054, 2015 WL 6847808, at *3 (10th Cir. Nov. 9, 2015) (internal quotations omitted). The Tenth Circuit has held that "[w]here a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC." *Id*. (citing *Carver v. Colvin,* 600 F. App'x 616, 618–19 (10th Cir.2015) (unpublished)[3]). However, that does not mean that the ALJ can turn a blind eye to Section I limitations. *Carver,* 600 F. App'x at 618–19. "[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability . . . the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (holding that the ALJ did not err in failing to the Section I limitations, given that there was no "contradiction between Sections I and III" of the MRFCA and no "failure to describe in Section III the effects of any Section I limitations."); *see also Baysinger v. Astrue*, No. 11-CV-00333-WYD, 2012 WL 1044746, at *6 (D. Colo. Mar. 28, 2012) ("[A]s to the argument that the ALJ is not required to consider the impairments found in Section I per the POMS, I find that portion of the POMS is contrary to Tenth Circuit law at least in the situation where . . . the findings in Section III of the form do not adequately take into account those impairments.").

In the present case, Dr. Suyeishi acknowledged in Section I that Ms. Martinez has two "sustained concentration and persistence limitations" and two "social interaction limitations." R. 88. Specifically, the sustained concentration and persistence limitations are moderate limitations in her ability to (1) carry out detailed instructions; and (2) maintain concentration for extended

---

[3] Although unpublished, the Court finds *Carver* persuasive. 600 F. App'x 616.

periods of time. R. 88. The social interaction limitations include moderate limitations in her ability to (1) interact appropriately with the general public; and (2) accept instructions and respond appropriately to criticism from supervisors. R. 88. Dr. Suyeishi's Section III narrative stated that Ms. Martinez "retains mental ability to do work not involving significant complexity or judgment; can do work requiring up to 3 months time to learn techniques, acquire information and develop facility needed for an average job performance." R. 89. Thus, the Section III narrative encapsulated the effect that the concentration and persistence limitations would have on Ms. Martinez's ability. However, the narrative failed to describe the effect that her social interaction limitations would have on her ability. Therefore, "the MRFCA cannot properly be considered part of the substantial evidence supporting [the] ALJ's RFC finding." *Carver,* 600 F. App'x at 618–19.

For the purposes of her step three analysis, the ALJ afforded Dr. Suyeishi's opinion great weight. R. 31. In her discussion of the record, the ALJ reiterated Dr. Suyeishi's Section III conclusions. R. 31. She also added, "[a]lthough she is moderately limited in her ability to interact with the public and accept instructions and respond appropriately to criticism from supervisors, she is not significantly limited in her ability to get along with co-workers or maintain socially appropriate behavior." R. 31. Notably, the ALJ looked beyond Dr. Suyeishi's Section III narrative by noting the social interaction limitations he listed in Section I. R. 31. The ALJ's RFC determination, however, only adopted Dr. Suyeishi's Section III narrative and his Section I finding that Ms. Martinez is moderately limited in her ability to interact with the public. R. 28.

It is unclear why the ALJ acknowledged that Ms. Martinez is "moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors" but then

subsequently concluded for the RFC that Ms. Martinez "can interact appropriately with co-workers and supervisors." R. 28, 31. "[A] moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ was not required to adopt Dr. Suyeishi's finding of a moderate limitation regarding Ms. Martinez's ability to interact appropriately with supervisors; however, she was required to explain why her RFC finding adopted only some but not all of Dr. Suyeishi's limitations. *Baysinger v. Astrue*, No. 11-CV-00333-WYD, 2012 WL 1044746, at *4 (D. Colo. Mar. 28, 2012) ("Thus, the ALJ must explain any difference between the ALJ's RFC finding and the physician's opinion, including why his RFC finding adopted only some but not all of the physician's restrictions.").

Accordingly, the ALJ's RFC was contrary to established Tenth Circuit law because the ALJ rejected one of the moderate limitations in Dr. Suyeishi's MRFCA without explanation while adopting the others. *Haga v. Astrue*, 482 F.3d at 1208. Furthermore, the ALJ's RFC was not supported by substantial evidence as Section III of Dr. Suyeishi's MRFCA did not encapsulate the moderate limitations he identified in Section I. *Carver,* 600 F. App'x at 618–19; *see also Baysinger*, 2012 WL 1044746, at *7. Thus, this case must be remanded for a proper assessment of Ms. Martinez's RFC. Once the Commissioner has properly assessed Ms. Martinez's RFC, the Commissioner can pose accurate hypothetical questions to the Vocational Expert at steps four and five.

### IV. Conclusion

In sum, the ALJ did not err in her analysis of what weight to give Dr. Hess's opinion, and adequately explained why Dr. Hess's opinion was given very little weight. However, the ALJ did err in relying on the SDM's opinion in formulating her RFC. The ALJ's RFC also improperly rejected one of the moderate limitations in Dr. Suyeishi's MRFCA without

explanation and was not supported by substantial evidence, given that Section III of Dr. Suyeishi's MRFCA did not incorporate the moderate limitations he identified in Section I. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 11th day of February, 2016.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge